20054. HUNTER *et al. v.* MOSS *et al.*

DECIDED JANUARY 14, 1930. REHEARING DENIED FEBRUARY 25, 1930.

*Joseph M. Lang,* for plaintiffs.

*W. T. Townsend, Y. A. Henderson,* for defendants.

LUKE, J. N. D. Hunter, Mrs. N. D. Hunter, I. J. Hide, H. C. Beck, Ada M. Beck, W. H. Hardin, and H. G. Scott, suing for themselves and such others similarly situated as might desire to intervene, brought an action against C. L. Moss, D. W. Weaver, O. M. Butler, and C. L. Ellis as directors of the Bartow County Bank, of Kingston, Ga.

After alleging that said bank was chartered as a State bank on or about April 1, 1925, with a capital stock of $15,000; that when the bank closed its doors and went into the hands of the superintendent of banks on July 14, 1926, petitioners were depositors therein in the aggregate sum of $6,000 out of a total deposit of $35,000; and that said directors "were in charge of the affairs of said bank and responsible for its management during its existence," the petition alleged that "it was, by reason of the gross mismanagement and negligence and failure to comply with the duties imposed upon defendants by law as directors of said bank of defendants

named herein, that said bank sustained large losses and became insolvent and was forced to close its doors." The petition then sets out the various ways in which the directors mismanaged the bank. Among other things, it was alleged that the directors allowed the reserve fund of the bank to be reduced far below the legal requirement; that they carried as solvent a large amount of worthless assets; and that they made loans greatly in excess of the amount the bank was permitted by law to lend.

Paragraph 12 of the petition, alleging in substance that said directors, by false statements, knowingly made, that said bank was solvent, caused the depositors to place their money in a defunct bank, was stricken from the petition by an amendment thereto after the petition had been demurred to as being duplicitous.

The petition set out the individual deposit of each of the plaintiffs, and ended with a prayer "that judgment be awarded against the defendants jointly and severally in favor of each plaintiff herein, as well as any others who may intervene in this case, for the respective amounts of their loss on account on deposits in Bartow County Bank."

The defendants demurred to the petition, upon the following grounds: "1. Said petition sets forth no cause of action against defendants, or either of them. 2. Said petition shows on its face that plaintiffs have no right to prosecute this suit. 3. There is a misjoinder of parties plaintiff. 4. There is a misjoinder of parties defendant. 5. There is a misjoinder of causes of action. 6. Said petition is multifarious. 7. Said suit is duplicitous, in that the plaintiffs seek to recover on the ground of the alleged negligent mismanagement of the affairs of the bank by defendants, and on the alleged fraud and deceit perpetrated upon plaintiffs by defendants. 8. Said suit presents no method or plan whereby the amount of the damages of plaintiffs, or either of them, can be ascertained by this court."

After the foregoing demurrer had been filed, plaintiffs amended their petition by striking therefrom paragraph 12 and by asking for an accounting in a court of equity, alleging that in order to avoid a multiplicity of suits and adjudicate all the matters involved in the case, it was necessary that a court of equity take jurisdiction of the case.

The case first went to the Supreme Court, but was transferred to

this court because the Supreme Court did not have jurisdiction of the case, and this court did. See *Hunter* v. *Moss,* 169 *Ga.* 100 (149 S. E. 705), decided September 20, 1929.

The court's judgment upon the demurrers, after the petition had been amended as hereinbefore set out, was in this language: "It is, therefore, considered, ordered, and adjudged by the court that the general demurrers of the defendants be, and they are, hereby sustained, and said case is hereby dismissed."

Since the court specifically sustained the "general demurrers" only, the special grounds of demurrer would in no event be for the consideration of this court, and we are concerned solely with the validity of the judgment sustaining the general demurrers and dismissing the case. See *Willingham* v. *Glover,* 28 *Ga. App.* 394 (111 S. E. 206), citing *Linder* v. *Whitehead,* 116 *Ga.* 206 (42 S. E. 358); *Simpson* v. *Sanders,* 130 *Ga.* 265 (60 S. E. 541); *Linam* v. *Anderson,* 12 *Ga. App.* 735 (4) (78 S. E. 424).

The general demurrer sufficiently raises the question that plaintiffs have no legal right to bring the action. Did they? In the judgment of the Supreme Court transfering this case to this court this language appears: "The action is at law, by depositors against the officers of an insolvent bank, for damages based on negligence and mismanagement of the affairs of the bank." Bearing in mind that the Supreme Court had reference to the petition as amended, and that paragraph 12 thereof had been stricken by amendment, unquestionably the case is "based on negligence and mismanagement of the affairs of the bank." The act of 1919 (Ga. L. 1919, pp. 135, 138, created the "department of banking," and designated as the chief officer of said department the "superintendent of banks," endowed with authority to take charge of and manage insolvent banks. In an amendment to that act (Ga. L. 1922, p. 65; Michie's Georgia Code, § 2366 (52)), this language occurs: "For the purpose of executing any of the powers and performing any of the duties hereby conferred upon him, the superintendent may, in the name of the bank, institute, prosecute and defend any and all actions, suits and legal proceedings, including suits against its directors or officers, or any of them, upon any cause of action which is vested by law in such bank or in the stockholders or creditors thereof."

The banking act of 1919 (Ga. L. 1919 p. 187; Michie's Georgia

Code, § 2366 (135)) contains this provision: "In the event the superintendent of banks . . should refuse to do any act or thing authorized or required by this act to be done, the person or persons affected by such failure or refusal, or the bank so affected, may institute appropriate proceedings in the nature of a mandamus against the superintendent in the superior court of the county in which such bank is sought to be incorporated or have its charter amended, renewed, or surrendered, to compel him to issue such permit or authority, or to do any such act or thing authorized or required to be done hereunder, which proceeding shall be tried as in other cases of mandamus." We quote from the next section of the act of 1919 as follows: "On the trial of any such cause the superintendent shall have the right to introduce evidence to sustain or tending to sustain his action or refusal to act in the premises, and if from the evidence in the case the court is of the opinion . . that the superintendent of banks has wrongfully or improperly refused to do any act or thing authorized or required by this act to be done, and that the same should be done, the court shall render an order, judgment, or decree directing the superintendent of banks to . . do such act or thing; and thereupon the superintendent shall . . do the same, and shall state in any permit, authority, or certificate issued by him under such order, that the same is done by order of the court."

In the case of *Hinton* v. *Mobley,* 167 *Ga.* 60, 62 (144 S. E. 738), Chief Justice Russell, speaking for the court, after stating that the sole question was whether a stockholder in a bank could maintain an action for malfeasance, misfeasance, or neglect of duty, against a director individually whose conduct as such is alleged to have caused the insolvency of the bank, whereby plaintiff lost the value of his stock and was subjected to a hundred per cent. assessment thereon, used this language: "In the case now before us, under the plain provisions of the banking act, supra, the superintendent of banks, as the successor of the insolvent bank, represents all the stockholders, and he alone can maintain an action like the present, *in which all of the acts alleged to have been done were injurious to all of the stockholders alike.* If the petition alleged a case in which the stockholders were induced to buy the stock by reason of the false statement alleged in the petition, a different case would be presented." (Italics ours.)

In Fant *v.* Brissey, 150 S. C. 15 (147 S. E. 632), the Supreme Court of South Carolina used this language: "There can be no controversy as to the proposition that a cause of action against the directors of a bank for *losses to the bank,* as a result of the negligent mismanagement of the affairs of the bank by the directors, lies in the corporation, as an asset of the corporation, and that a creditor of the bank can sue only in the right of the corporation, after having taken the necessary steps to induce action by the officers of the corporation. . . A distinction, however, is palpable between such a cause of action and one which is inherently a personal claim of a creditor on account of wrong *done to him, not to the corporation."* The writer of that decision quotes from Killen *v.* Barnes, 106 Wis. 546 (82 N. W. 536), as follows: "There are numerous cases where the distinction has not been clearly recognized, if at all, between a wrong to a depositor of a bank committed by its officers, for which they are personally liable directly to such depositor on the ground of deceit, and a wrong by such officers to the corporation for which they are liable to such corporation, and through it to the creditors. Delano *v.* Case, 121 Ill. 247, 12 N. E. 676 (2 Am. St. Rep. 81), is a good specimen of such cases."

It is the design of the banking act of 1919 that the superintendent of banks shall collect all monies due a defunct bank, whether the liability arises from contract or from tort. If the alleged negligent misconduct of the directors created a liability, such liability was to the bank, and it was exclusively within the province of the superintendent of banks to enforce it. Of course, had the gravamen of the action been false and fraudulent representations made by the directors to the depositors, which induced them to put their money in a defunct bank, the situation would have been different. See *Hines* v. *Wilson,* 164 *Ga.* 888 (139 S. E. 802), and *Hinton* v. *Mobley,* supra.

Our conclusion is that the court did not err in sustaining the general demurrer and dismissing the action.

*Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur.*