The complainant seeks a decree enjoining the defendant from exercising any of its corporate franchises and thereupon the appointment of a receiver to liquidate and distribute the defendant's assets. The complainant alleges that the business of the defendant has been and is being conducted at a great loss and greatly prejudicial to the interest of its creditors and stockholders and that its business cannot be conducted with safety to the public and advantage to the stockholders.
The powers invoked by the prayers of the bill arise solely from the statute, R.S. 14:14-3. Smith v. Monmouth Title andMortgage Guaranty Co., 110 N.J. Eq. 117; 159 Atl. Rep. 509;Booream v. Washington Casualty Insurance Co., 110 N.J. Eq. 164;159 Atl. Rep. 519. In Smith v. Washington Casualty InsuranceCo., 110 N.J. Eq. 122, 136; 159 Atl. Rep. 510, Vice-Chancellor Berry distinguishes the liquidating receiver sanctioned by statute from the custodial receiver appointed under the inherent jurisdiction of Chancery. The history of the statutory jurisdiction has been related in several former opinions.Pierce v. Old Dominion, c., Smelting Co., 67 N.J. Eq. 399;58 Atl. Rep. 319; 72 N.J. Eq. 595; 65 Atl. Rep. 1005; affirmed,74 N.J. Eq. 450; 70 Atl. Rep. 1101; Bull v. International PowerCo., 84 N.J. Eq. 6; 92 Atl. Rep. 796; decree amended in 84 N.J. Eq. 209; 93 Atl. Rep. 86; affirmed, 85 N.J. Eq. 206;96 Atl. Rep. 364; Gallagher v. Asphalt Company of America, 65 N.J. Eq. 258;55 Atl. Rep. 259. The latter case was heard on a renewed application. 67 N.J. Eq. 441; 58 Atl. Rep. 403.
The object of the act is to protect the public at large from imposition, and to promote and secure the general interest of stockholders and creditors. Kelly v. Kelly-Springfield TireCo., 106 N.J. Eq. 545 (at p. 548); 152 Atl. Rep. 166;Rawnsley v. Trenton Mutual Life Insurance Co., 9 N.J. Eq. 95
(at p. 96); and on amended bill, 9 N.J. Eq. 347. See, also,Slade Bros., Inc., v. Eagle's Meat and Poultry Market,125 N.J. Eq. 336; 5 Atl. Rep. 2d 692; Auburn Button Works,Inc., v. Perryman Electric Co., Inc., 107 N.J. Eq. 554;154 Atl. Rep. 1; Garr v. Kelly-Springfield Tire Co., *Page 370 117 N.J. Eq. 352; 176 Atl. Rep. 85; Kron v. Trenton AutomotiveCollateral Co., 96 N.J. Eq. 162; 124 Atl. Rep. 757.
The summary proceeding on bill, answer and affidavits is a final hearing, a proceeding in rem which fixes the status of the corporation in respect of the exercise of corporate powers.Pierce v. Old Dominion, c., Smelting Co., supra; Bull v.International Power Co., supra; Nottebaum v. Leckie,31 Fed. Rep. 2d 556; cert. den. Guaranty Trust Company of New York
v. Noxon Chemical Products Co., 280 U.S. 558; 50 S.Ct. 17;74 L.Ed. 613. It is "a sort of equitable quo warranto designed to destroy the corporate existence and not to preserve it." Smith
v. Washington Casualty Insurance Co., supra.
The deprivation of the life of a corporation is a solemn act, not to be undertaken lightly. Auburn Button Works, Inc., v.Perryman Electric Co., Inc., supra; Rawnsley v. Trenton MutualLife and Fire Insurance Co., supra; Panzer v. National FinanceCorporation of America, 117 N.J. Eq. 231; 175 Atl. Rep. 188;Greenbaum v. Lafayette and Broad Realty Corp., 96 N.J. Eq. 317;124 Atl. Rep. 775; Argalas v. Frank Theiss Co., 115 N.J. Eq. 561; 171 Atl. Rep. 818; reversing 114 N.J. Eq. 512;168 Atl. Rep. 224; Garr v. Kelly-Springfield Tire Co., supra.
The appointment of a statutory receiver is not a matter of strict legal right. It involves the exercise of sound discretion.Kelly v. Kelly-Springfield Tire Co., supra; Glaser v.Achtel-Stetter's Restaurant, Inc., 106 N.J. Eq. 150;149 Atl. Rep. 44; Shonnard v. Elevator Supplies Co., Inc., 111 N.J. Eq. 94; 161 Atl. Rep. 684.
To warrant the dissolution of the company on the ground alleged in the present bill, the complainant must adequately establish three essentially jurisdictional facts: (1) Defendant's businesshas been conducted prejudicially and at great loss; (2) it isbeing so conducted; and (3) the defendant's business cannot be
conducted in the future with safety to the public and advantage to the stockholders. Kelly v. Kelly-Springfield Tire Co.,supra; Fox v. Pathe Exchange, Inc., 106 N.J. Eq. 522;151 Atl. Rep. 463; Shonnard v. Elevator *Page 371 Supplies Co., Inc., supra; Kron v. Trenton AutomotiveCollateral Co., supra.
The defendant was incorporated on November 21st, 1928, under the provisions of our Corporation Act. Its incorporation served to effectuate a union of the Federal Terra Cotta Company and the Seaboard Clay Manufacturing Company. Its industry is the manufacture of an ornamental clay product used in building construction. Its capital structure consists of 6,250 shares of first preferred, 8,250 shares of second preferred and 22,000 shares of common stock. The preferred stock has a par value of $100 a share. The common stock has no par value.
The complainant, a Delaware entity, is the lineal descendant of the Federal Terra Cotta Company and it holds all of the first preferred shares and 10,000 shares of the common stock of the defendant. The remaining shares are held by the "Mathiasen" group or the Seaboard Ceramic Corporation, representing in the defendant corporation the Seaboard Clay interests. The allocation of the shares of stock has remained unchanged ever since the consolidation was achieved. Cumulative voting has evidently been employed with the result that, of a board of nine directors, the Laredef interests elect four and the Mathiasen interests, the remaining five. However, it is mutually acknowledged that both groups have always co-operated harmoniously.
The current assets of the corporate defendant consist of real estate, buildings, patent rights, machinery and equipment carried on the books of the company at $1,907,292.20; cash, investments, inventories and accounts receivable carried on the books at $779,427.71; and various deferred charges and good will totaling $20,733.86. The gross book assets therefore total $2,207,453.77. Against these assets are reserves for depreciation, doubtful accounts receivable, extraordinary repairs, c., of $876,300. The net book assets are $1,831,153.77. The company owes in accounts payable $21,000. There are no wage creditors. The ratio of current liabilities to current assets is approximately one to thirty. The company owns a considerable amount of securities. A substantial basis of credit is available. *Page 372 
The failure of the defendant to pay dividends for the past five years is emphasized. The declaration of dividends is a corporate problem entrusted to the wisdom and discretion of the directors.Shonnard v. Elevator Supplies Co., Inc., supra. While dividends have accumulated for the period March 1st, 1937, to February 28th, 1942, in the aggregate sum of $218,750 and have not been paid, yet the withholding of dividends for the period stated resulted from the unanimous action of the board of directors. The complainant has heretofore received in cash and in cash dividends $342,344. The proofs incidentally indicate that the principal competitor of the defendant has not paid any dividends since 1930.
Although it is alleged in the bill that the officers are inefficient, have placed relatives on the corporate payrolls and have themselves taken excessive compensation, the proofs do not vindicate these accusations.
Some of the directors have been engaged in the same or a similar field of enterprise for more than forty years. They came to the defendant directly from the corporations so consolidated. The officers have been continuously re-elected throughout the fourteen years of the defendant's corporate existence. They are in fact governing a corporation which is conspicuously solvent and assuredly possessed of excellent credit. It may be inferentially deduced from the affidavits submitted by the complainant that the officers have been and are loyal, honest and conscientious in their determinations of management and policy. It is asserted by the complainant that they lack the requisite managerial ability.
The annual salaries of the six active officers range from $5,000 to $8,000. Such salaries payable to active officers of a corporation of this magnitude are not so exorbitant as to manifest clearly an abuse of business policy.
Moreover, an examination of the proofs does not reveal a purposeful inflation of the payrolls to accommodate relatives. Three of the active officers are related. Only three of the employees of the company are related to the officers or any of them. One receives wages of $32 a week; another $42 and the third, a ceramist and factory superintendent, is compensated at $80 a week. It is not intimated that these *Page 373 
employees are incompetent. To the contrary, they are represented to be capable and particularly experienced in the work assigned to them.
During the years 1935 to 1938, inclusive, the defendant earned net profits somewhat in excess of $370,000. During the past three years, losses of more than $320,000 have been sustained. The largest annual loss of approximately $154,000 was suffered during the past year. These losses have undoubtedly precipitated the present suit.
It is therefore evident that the business of the defendant has been and is being conducted with substantial losses. The pivotal question to which the real pressure of the arguments has been applied is whether the business of the defendant is being conducted with such prejudice and injury to the interests of its stockholders, that its continued pursuance with safety to the public and advantage to the stockholders is manifestly impracticable.
It is earnestly asserted by the complainant that the fortune of this enterprise in the future is not auspicious because of the diminished consumption of its principal product, the impact of the exigencies of war and the abortive experimental efforts to manufacture a new product now marketable. The officers and directors seem to be aware of the imperative urgency of curtailing the operating expenses of the company and of directing their exertions to the adjustment of the enterprise to the existing conditions. The salaries of the officers are now approximately one-half their original proportions due to a series of reductions. The company has undertaken to introduce the use of a new product called "Duracon." It is briefly described as a high type of concrete slab faced with white quartz. This material was supplied to surface the United States Naval Medical Center at Washington, District of Columbia. The product is attractive and well favored but in this transaction the defendant suffered a loss of $124,000. This adventure was indeed extravagant and admittedly experimental; yet it is said that the knowledge thus acquired will be exceedingly useful in future undertakings. Profits and losses are perhaps the normal characteristics of a business cycle. The significant observation is *Page 374 
that the officers and directors are not accused of having acted in bad faith. In fact, the complainant encouraged this experiment. The complainant is now discouraged. The majority members of the board of directors have resolved that a continuance of the business will better serve and safeguard the interests of the stockholders than an immediate liquidation of the assets of the company. They feel that they are advocating a cautious preservation as against a sacrificial dissolution of the corporation. Reasons recommending each course are projected.
The defendant has advantageously leased a large portion of its property. Other expenses have been reduced. Since the institution of this suit contracts have been awarded to the defendant which will probably yield a profit. The officers and directors would appear to be honestly endeavoring against adverse conditions to prescribe a course which they resolve to be in the beneficial interest of themselves and the stockholders. The corporation is perfectly solvent and the authority of the directors when exercised in good faith and within the law should be regarded as absolute. It is a well settled rule of law that questions of business policy devolve upon the officers and directors who are elected by the stockholders for the precise purpose of determining such problems. It is peculiarly their duty and prerogative to evaluate the business outlook, and while the court may not be as sanguine as they, the substitution of its judgment for that of the chosen managers of the business is not justified in the circumstances here disclosed. City Bank Farmers' TrustCo. v. Ringwood Co., 110 N.J. Eq. 525; 160 Atl. Rep. 824;Kelly v. Kelly-Springfield Tire Co., supra; Auburn ButtonWorks, Inc., v. Perryman Electric Co., Inc., supra; Argalas v.Frank Theiss Co., supra; Farmers' Loan and Trust Co. v.Hewitt, 94 N.J. Eq. 65; 118 Atl. Rep. 267; affirmed, 94 N.J. Eq. 187; 118 Atl. Rep. 926; Shonnard v. Elevator Supplies Co.,Inc., supra; Edison v. Edison United Phonograph Co., 52 N.J. Eq. 620; 29 Atl. Rep. 195; Costello v. Thomas Cusack Co.,96 N.J. Eq. 95; 124 Atl. Rep. 620; Benedict v. ColumbusConstruction Co., 49 N.J. Eq. 23; 23 Atl. Rep. 485.
The statutory power being in derogation of the common *Page 375 
law — Greenbaum v. Lafayette and Broad Realty Corp., supra — the statutory prerequisites must be clearly manifest in the complainant's proofs. Kelly v. Kelly-Springfield Tire Co.,supra; Madsen v. Burns Bros., 108 N.J. Eq. 275;155 Atl. Rep. 28. The power to enjoin is an extraordinary power of this court as contrasted with its usual remedial and preventive jurisdiction; it ought to be used sparingly and with great caution. Citizens Coach Co. v. Camden Horse Railroad Co.,29 N.J. Eq. 299; Ellerman v. Chicago Junction Railways, c., Co.,49 N.J. Eq. 217; 23 Atl. Rep. 287; Elevator Supplies Co., Inc.,
v. Wylde, 106 N.J. Eq. 163; 150 Atl. Rep. 347.
The discordance in the affairs of the defendant has obviously arisen out of problems of business policy with the solution of which this court will not ordinarily interfere. The proofs submitted do not adequately warrant the conclusion that the business of this corporation cannot be conducted with safety to the public and advantage to its stockholders. Therefore, the relief sought by the complainant must be denied and the bill of complaint and the order to show cause dismissed. Upon presentation by counsel, a decree will be advised in accordance with the conclusion here expressed. *Page 376